[Civ. No. 2252.   Third Appellate District.—November 15, 1921.]

# AUTOMOBILE, TRUCK, TRACTOR AND IMPLEMENT COMPANY (a Corporation), et al., Respondents, v. L. O. SALLADAY, Appellant.

[1] CLAIM AND DELIVERY—PRESENT RIGHT OF POSSESSION—PLEADING—SUBSEQUENT DEFAULTS UNDER LEASE CONTRACT — SUPPLEMENTAL COMPLAINT.—In an action in claim and delivery to recover the possession of an automobile based on an alleged default in the payment of an installment of rent under a lease contract, the plaintiff is not entitled to file a supplemental complaint setting up defaults in payments occurring after the commencement of the action, since in such an action the plaintiff on commencing the same must show a present right of recovery.

[2] LEASE CONTRACT—DEFAULT—RETAKING OF POSSESSION OF CHATTEL—SUBSEQUENT DEFAULTS—INSUFFICIENT BASIS FOR FORFEITURE.—A lessor of an automobile cannot collect rent for the use of the car after he has repossessed himself of the same and elected to terminate the lease by reason of a default in the payment of an installment of rent, at least in the absence of an express covenant to that effect, and nonpayment of installments due after such retaking cannot be assigned as a basis for forfeiture.

[3] CONTRACT—EMPLOYMENT OF SALESMAN—REIMBURSEMENT FOR EXPENSES—PERFORMANCE OF DUTIES OUTSIDE OF CONTRACT.—Where a letter employing a salesman on a salary with a commission to sell trucks, tractors, and other articles contained no intimation that the employee was to discharge his duties at any place other than the one indicated in the caption of the letter, the salesman was entitled to payment for his expenses incurred in selling such goods in various counties where he was sent by his employer.

[4] ID.—NATURE OF LEASE CONTRACT—INSTRUCTION.—Where a lease contract is plain, clear, and wholly free from ambiguity, and its terms provide for a lease and not a sale and it is distinctly stated in the writing itself that the lessee acquires no interest in or title to the chattel, a requested instruction in an action for its recovery after default in payment of the rental that it might be found that the alleged lease was in fact an absolute sale is properly refused.

APPEAL from a judgment of the Superior Court of Mendocino County.   J. Q. White, Judge.   Reversed.

---

3. Implied or apparent authority of agent or employee to bind principal for board or traveling expenses, note, **L. R. A.** 1916B, 754.

The facts are stated in the opinion of the court.

Weldon & Wessels for Appellant.

W. F. Cowan for Respondents.

PREWETT, J., *pro tem.*—This case involves an alleged forfeiture of a lease of a Nash touring car. The respondents, by an instrument in writing, on March 18, 1919, leased to appellant the car in question for an agreed rental of $1,720, payable as follows: $270 in cash, $700 in two months and the balance in monthly installments of $62.50. It is provided in the lease that there should .be a monthly payment of $62.50 on May 18th, making the payment for that date $762.50; but both the complaint and answer show that this provision is a mistake and that only $700 was to be paid on that date. It is expressly provided that the lease shall terminate on May 18, 1920. An important provision of the lease reads: "Lessee acquires no interest or title to said property, *it being distinctly understood that this is a lease.*" (The italics are ours.) A further provision reads: "If the lessee fails to make any payments herein provided . . . then this lease shall *ipso facto* become immediately terminated, without any notice whatsoever to the lessee, and the lessors may take immediate possession, of said property without legal proceedings, etc." Time is declared to be of the essence of the contract.

The respondents received from the appellant a certain Grant car on the $700 payment and credited appellant with about $475 on account thereof. A further credit for gasoline used by appellant in his work for the respondents and a further sum of $100 due him as salary, brought the entire credits up to $624.87, leaving due, according to the claims of the respondents, a balance of $75.13 on the $700 payment, which, as above set out, became due on May 18, 1919. The action was commenced on June 8, 1919, and before any other or further defaults had accrued. Hence, the entire cause of action turns upon the existence of this alleged default. It is admitted that the appellant has never paid this balance of $75.13 in cash. He claims, however, that it was fully and more than compensated by certain counter-demands for salary, gasoline, hotel bills, use of his car, and

extra commissions earned by the sale by him of certain pleasure cars, all aggregating several hundred dollars in excess of the amount due at the time of the alleged default. The court, on motion, struck out his defenses founded thereon, and the alleged error of the court in so doing will be noticed further along.

[1] On June 10, 1919, two days after the commencement of this action, the respondents caused the property in question to be seized by the sheriff and delivered to them, and thence hitherto have held and possessed the same. On May 8, 1920, about eleven months after filing the original complaint, the respondents filed a supplemental complaint, wherein they allege a succession of defaults covering all the eleven payments that were provided to be made in the interval from June 18, 1919, to April, 18, 1920, both dates inclusive, and aggregating $687.50. Upon these eleven alleged defaults, the respondents base additional claims of forfeiture. It is expressly averred in the supplemental complaint that these additional sums became due "as rental for the use of the automobile." The appellant moved the court to strike out the supplemental complaint on the grounds that the complaint showed that the lease had been terminated on June 8, 1919, and that he was not liable for rent while deprived by the owners of the use of the car. The court denied the motion and overruled a demurrer urging the same grounds. The court, over objection, admitted evidence to sustain the allegations of the supplemental complaint and instructed the jury, in its third and seventh instructions, that they must find for the respondents if said sum of $687.50, or any part thereof, was unpaid at the time of trial.

In these rulings and instructions prejudicial error was committed. It is settled law in this state that a plaintiff in replevin on commencing his action must show a present right of recovery. Of a large number of authorities in support of this principle, attention may be directed to *Afferbach* v. *McGovern*, 79 Cal. 268 [21 Pac. 837], *Fredericks* v. *Tracy*, 98 Cal. 658 [33 Pac. 750], and *Holly* v. *Heiskell*, 112 Cal. 174 [44 Pac. 466]. If the original complaint in this action did not show in respondents a present right of possession, the action was premature and there was nothing to supplement. On the other hand, if the complaint did show

such right of possession by reason of the alleged default, no subsequent defaults could show that fact in any greater degree. If their right to the property had then vested, it was because of the election by them, under the terms of the lease, to terminate the right of the appellant and, in fact, to terminate the lease itself. The lease is especially strong in its provisions that a default by the appellant terminates both his right and the lease itself.

It is thus seen that, although the respondents by their own act deprived the appellant of the use of the property, they nevertheless attempt, by this supplemental complaint, to charge him for the use of the auto for the many months during which they withheld such use from him. And they have sought to predicate still further forfeitures upon his default in failing to pay for such deprived use. The trial court in its instructions has gone even further and has, in effect, charged the jury that, although they may find that the original default as to the $75.13 never occurred, still, if they find that some or any of these eleven later defaults occurred, they must find for the respondents.

[2] It needs no citation of authorities to show that a lessor cannot collect rent for the use of a chattel after he has repossessed himself of the chattel and terminated the lease. He cannot, at least in the absence of an express covenant to the contrary, withhold the chattel and still collect rent money for its use. If the respondents were not entitled to collect rent for this eleven months' period, it follows that they cannot assign the nonpayment thereof as a basis for a forfeiture. Our attention has not been drawn to any California case wherein personal property was involved which fully covers this principle. No difference, however, in this regard can be discovered between leases involving real property and those involving chattels. Each party is estopped to claim both the possession of the leased property and compensation for its use. Each, when he voluntarily terminates the lease, and, by regaining the property, places it out of the power of the lessee to use it, terminates the lease for all purposes.

In *Morse v. Tochterman*, 21 Cal. App. 726 [132 Pac. 1055], this court uses the following language: "The neglect of the landlord to keep the premises in a condition suitable for the purpose for which they were rented may be treated

by the tenant as an eviction and he may refuse to pay rent."
*Skaggs* v. *Emerson,* 50 Cal. 3, is referred to with approval
in many of the later cases. On page 6 thereof the court
says: "But if the averments of the answer, which were
stricken out by the court below, are true, no recovery could
be had upon the covenant to pay rent, since defendant had
been evicted by the plaintiff from a substantial part of the
demised premises. . . . As he was not liable to pay rent,
if the averments of the answer are true, the lease was not
forfeited by reason of the nonpayment, whatever notice or
demand was given or made." *Brandt* v. *Phillippi,* 82 Cal.
640 [23 Pac. 122], *Dengler* v. *Michelssen,* 76 Cal. 125 [18
Pac. 138], and *Kelley* v. *Long,* 18 Cal. App. 159 [122 Pac.
832], are to like effect. The respondents had an election of
remedies, and, having elected to repossess themselves of the
property and terminate the lease, they cannot collect rent that
was never earned nor assign its nonpayment as a ground
of forfeiture. This rule heaps no hardship upon respond-
ents, since they had the use of their property during this
entire period of eleven months. The contrary rule would
deprive the appellant of the property and still hold him for
unearned rentals. We conclude that the respondents were
not entitled to rent after they took possession of the prop-
erty, nor to avail themselves of alleged defaults occurring
after that event. It is impossible to determine whether the
jury found for the respondents by reason of these subse-
quent defaults or on account of the original default in fail-
ing to pay the aforesaid balance of $75.13. It seems prob-
able, if we may be permitted to conjecture, that the verdict
was based upon some of the subsequent defaults. The acts
of the court in sustaining the supplemental complaint, in
admitting evidence in support thereof, and in instructing
the jury that it might found its verdict thereon, constitute
fatal errors, for which the judgment must be reversed.

In instruction numbered 7B the court instructed the jury
as follows: "In the letter from Mr. Weldon to Mr. Held
the defendant claims a credit of $83.80 for tires for the
Grant and Nash cars. When a witness in his own behalf,
defendant stated that he no longer claimed such a credit.
Therefore in determining the indebtedness of Mr. Sallady to
the plaintiffs you should charge him with $83.80 for said
tires."

The appellant insistently claimed that he was not to be charged with these tires, and at no time did he testify to the contrary. Not only is the charge erroneous for this reason, but it implies the existence of an indebtedness from the appellant to the respondents—one of the very facts in issue.

The court in one of its instructions (7D) instructed the jury as follows: "The defendant when on the witness-stand admitted that the statement in one of his verified answers that he is now indebted to the plaintiffs in the sum of $165.12 is true, etc." (Tr., p. 188.)

These alleged admissions are mere affirmative answers to certain questions propounded to the appellant by the attorney for the respondents in the course of the cross-examination. A careful reading of pages 90 to 94 and of page 113 of the transcript shows clearly that the appellant did not intend to be so understood. In the light of his vehement insistence that he owed nothing at all, it was an invasion of the province of the jury to charge that he owed that sum. Moreover, the charge advises the jury that this admission was made in a verified answer. The record before us does not justify this statement.

[3] Since the case must go back for a new trial, it is proper that we notice some other points, which will probably arise in the course of the subsequent proceedings. About six weeks prior to the date of the lease the respondents hired the appellant as a salesman. The respondents insist and the court instructed that the terms of this hiring are fully shown by the following letter:

"Santa Rosa, Cal., January 30 1919.
"Mr. L. O. Sallady, Ukiah, Cal.,

"Dear sir: Confirming our conversation of a few days ago, please be advised that you are hereby engaged as of Feb. 1 1919, by this company to sell trucks, tractors and such other articles as we now handle, on the following basis: Salary, $200 per month, semi-monthly, with a commission of 7% on net factory price on all sales over $3,500 per month. This applies to trucks and tractors only. Other arrangements regarding pleasure cars will be made at some future date.                    Yours very truly

"AUTOMOBILE TRUCK, TRACTOR AND IMP. Co.
"By B. M. LEVY, Trustee."

That portion of the controversy that revolves around this contract of employment concerns certain items incurred by the appellant while in the discharge of his assigned duties for the respondents. These other items do not involve the services rendered by appellant, but are incidental thereto, such as hotel bills while traveling for respondents, use of auto, bills for gas, oil bills, and tires. It will be noticed that there is no provision or intimation in the above letter that the appellant is to travel or, in fact, to discharge his duties at any place other than the one indicated in the caption of the letter. When, therefore, the respondents sent the appellant into various counties to sell goods, such directions were over and above and independent of the terms contained in the letter itself. It is immaterial whether these directions involved express or implied contracts for reimbursement. In either event they constituted legitimate demands against the respondents. The respondents implied as much when they gave the appellant credit for part of the bill for gasoline and a balance of $100 due on monthly salary. The appellant sought to show that one of the respondents (Tr., p. 32) had testified in his deposition that they had agreed with appellant that he was to have "any expenses of going out of town, hotel bills, or anything incidental to the business." The court sustained an objection to proof of this admission on the ground that no basis for impeachment had been laid. The appellant was entitled to prove this as an independent statement or admission made by a party to the suit and against his own interest, and wholly without reference to impeachment.

Another and a very important item of offset is the claim of appellant to $120 commission on the sale of one pleasure car and $175 on another. These commissions, it will be observed, are expressly reserved in the letter of employment above quoted. There seems to be no possible cavil that the appellant was entitled to offset this demand against the alleged deficit of $75.13 on the $700 payment. The appellant turned in a Grant car at $700 on the rental for the Nash car in suit. There is no dispute that he was to receive this credit, and that it was to go on the $700 payment that became due on May 18, 1919. However, the respondents claim that, while they nominally allowed him credit for the full sum of $700, they were entitled to deduct, and

did deduct, therefrom various items of repairs expended on the Grant car by them. In this way, the actual credit was reduced to less than $500. The appellant filed an answer wherein he set up these various items as cross-demands or setoffs to the demand. of the respondent for rent. He set up also an alleged agreement that he was to have credit for the Grant car in the full sum of $700.

These defenses were all stricken out on motion of the respondents. We are at a loss to understand upon what theory this order can be sustained and we receive no aid thereon from the respondent's brief. These various demands are sufficient in amount, if sustained by evidence, to meet and far more than compensate the demands of respondents for rent. The court repeatedly struck out or excluded evidence offered by the appellant for the purpose of proving these demands. (Tr., pp. 10, 15, 25, 27, 32, 33, 34, 37, 62, 63, 76, and others.) This was in line with its policy in striking out the allegations of the answer concerning them.

In this answer it is averred that some of the demands were to constitute payment on the rent while, as to others, it is merely averred that they were contracted in favor of appellant. It is manifestly immaterial, save as to the method of proof, whether the parties expressly contracted that they were to constitute payment *pro tanto,* or whether they were mere contract obligations existing in favor of appellant, since in the one event they extinguish and in the other they compensate and thus extinguish the demand of respondents. The law supplies the contract that they should be so applied. There can be no dissent from the doctrine that one who owes money to another on a written or other contract may meet its demands by setting off counter-obligations arising on contract and existing in his own favor. In the face of the express provisions of sections 437 and 438 of the Code of Civil Procedure allowing such counterclaims it would be idle to discuss the point. Section 440 of the same code provides that such demands shall be deemed compensated so far as they equal each other. This in turn implies that the facts showing such compensation may be pleaded in defense. If allowed and proved the appellant would not have been in default on his payment of $700 due

before June 8, 1919, on which day this action was commenced. The order of the court in striking out these defenses was based upon the ground that they were "redundant, immaterial, repetition, and irrelevant." It may be gathered from the many rulings of the court excluding evidence offered in support of these defenses, that the chief factor in the mind of the court was the contention of respondents that these defenses sought by parol to modify the terms of a written contract. But the answer did not show that the agreements set up therein were oral, nor did it, as to nearly all of them, show that they were a part of the contract of lease. So far as appears from the answer itself, these agreements were quite independent of the contract of lease. It is said, however, that the answer to the supplemental complaint contains these defenses and that any error of the court in striking them from the answer to the complaint was thereby cured. The appellant was entitled to plead these defenses as against the cause of action set out in the complaint, which was that he had made default in that he had not paid the deficit of $75.13 claimed as due on the $700 payment. Nor can it be said that the case was tried on the assumption or theory that these defenses were properly before the court. It is true that some testimony of the appellant himself got before the jury as to some of the defenses, but much was stricken out or otherwise excluded (Tr., p. 62), and the little that was produced was uncorroborated, because the court refused to permit other witnesses to testify concerning these matters. That the trial court understood that these defenses were not before the jury is shown by the fact that it refused instructions offered by appellant advising the jury that they might consider them.

[4] The court committed no error in refusing to charge the jury that they might find that the alleged lease was in fact an absolute sale. The writing is plain, clear, and wholly free from ambiguity. Its terms provide for a lease and not a sale, and it is distinctly stated in the writing itself that the lessee acquired no interest in or title to the property and that the transaction constituted a lease. In the absence of an imperfection in the writing this is conclusive.

The appellant is entitled to amend his answer to show that these counter-demands exist and that they compensated the demands of the respondent. The judgment is reversed.

Finch, P. J., and Burnett, J., concurred.