[Civ. No. 53204. First Dist., Div. Three. Mar. 21, 1983.]

MACHINISTS AUTOMOTIVE TRADES DISTRICT LODGE NO. 190 OF NORTHERN CALIFORNIA et al., Plaintiffs and Appellants, v. UTILITY TRAILER SALES COMPANY, Defendant and Respondent.

---

COUNSEL

Van Bourg, Allen, Weinberg & Roger and David A. Rosenfeld for Plaintiffs and Appellants.

Latham & Watkins and Joel E. Krischer for Defendant and Respondent.

---

OPINION

**FEINBERG, J.**—On this appeal by an employee (Bowers) and his union, Machinists Automotive Trades District Lodge No. 190 of Northern California

(Union), from an adverse judgment, the only question is whether Labor Code section 2802[1] provides a statutory right to indemnity from the employer, Utility Trailer Sales Company (Employer), for the loss of Bowers' tools in a weekend burglary of the Employer's premises. For the reasons set forth below we have concluded that Bowers was entitled to indemnity and we reverse.

The facts were not in dispute and were found as follows by the court: Bowers, a refrigeration mechanic, pursuant to the custom of the industry, furnished the tools necessary to do his assigned work. Bower's tools were very heavy and were kept in two toolboxes. Three men were needed to move one toolbox; the other could be moved only by forklift.

Bowers' tools were kept inside the inner building of the Employer's shop. Before the Thanksgiving weekend of 1977, Bowers locked his tools in the inner office provided by the employer by welding a steel bar across the inner door. The tools were stolen in a burglary over that weekend. Bowers' tools were valued at over $8,000. The Employer refused to reimburse him. The parties submitted the question of whether Bowers had a right to reimbursement to arbitration under their collective bargaining agreement. After the arbitrator rendered a decision in favor of the Employer, Bowers commenced the instant summary judgment proceedings; the matter was submitted on the transcript of the arbitration proceedings and the additional briefs and argument of the parties.

Section 2802, in pertinent part, provides: "An *employer shall indemnify his employee for all that the employee* necessarily expends or *loses in direct consequence of the discharge of his duties* as such . . . ." (Italics added.) The question here is whether the loss occurred in *direct consequence* of the employment.

■ Preliminarily, we dispose of the Employer's contention that Bowers' statutory claim was preempted by federal labor law. The Employer argues that the terms of Bowers' employment were a subject of collective bargaining, and the final resolution of that issue in the bargaining supersedes any state law. The record, however, indicates that here the arbitrator concluded that the issue of indemnity for the loss of tools was not resolved by collective bargaining, as the parties failed to agree upon a proposal covering tool losses. The record also indicates that the Employer intended to deal with the indemnity issue at its own discretion on a case-by-case basis. ■ Moreover, the fact that a matter is a subject of collective bargaining does not preclude the state from adopting standards to protect the welfare of workers. (*Industrial Welfare Com.* v. *Superior Court* (1980) 27 Cal.3d 690, 728 [166 Cal.Rptr. 331, 613 P.2d 579].) ■ In any event, Bowers' statutory right to indemnity is independent of any

[1]All statutory references hereinafter are to the Labor Code, unless otherwise indicated.

contractual right. (*Alexander* v. *Gardner-Denver Co.* (1974) 415 U.S. 36, 52 [39 L.Ed.2d 147, 160, 94 S.Ct. 1011].) The arbitrator here had authority only to resolve contractual questions. (*Id.*, at pp. 53-54 [39 L.Ed.2d at pp. 161-162].)

While Bowers was required to provide the tools necessary for his work pursuant to the custom of the industry,[2] he was not required to leave the tools on the Employer's premises nights and weekends. Given their weight and the equipment and men required to move them, carrying the tools back and forth from the Employer's premises would have been practically impossible. In addition, the Employer required employees to submit to an inspection and inventory whenever tools were brought to and taken from its premises. The trial court found that the Employer's inspection and inventory procedures were for purpose of safeguarding the tools for the benefit of the employees and not to permit the Employer control of the use and availability of the tools.

The trial court and the Employer relied on *Earll* v. *McCoy* (1953) 116 Cal.App.2d 44 [253 P.2d 86],[3] in which a fire destroyed the hand tools voluntarily left by automobile mechanics on the premises of the employer. The tools, furnished by the employees, for practical reasons and by custom and usage, were left in the garage overnight. The tools weighed several hundred pounds; the employer gave no express instructions to his employees to leave the tools on the premises, but his foreman discouraged the employees from taking them home. In holding that section 2802 did not apply, the court, at page 47, noted that the losses covered by the statute "must be *in direct consequence of the discharge of the employee's duties or in obedience to the employer's directions.*" (Italics added.) The court also noted that the employer exercised no control over the tools, but that it was impractical for the employees to remove the tools on a daily basis. We do not find the reasoning of the Fourth District in *Earll, supra,* persuasive or in accord with the purpose of the statutory scheme of which section 2802 is a part.

Nor do we find helpful the bailment analysis often utilized by other jurisdictions.[4] (See Annot., Employer's Liability for Theft or Disappearance of Employee's Property Left at Place of Employment (1972) 46 A.L.R.3d 1306.)

[2]In the instant case, the trial court adopted the arbitrator's finding that Bowers supplied his own tools pursuant to the custom of the industry, and rejected Bowers' contention that he was required to furnish the tools as a condition of employment.

[3]We note that although the petition for hearing of that case was denied April 9, 1953, Chief Justice Gibson, Justice Carter and Justice Traynor were of the opinion that the petition should have been granted. (*Id.*, at p. 47.)

[4]Usually a bailment analysis results in relieving the employer of liability unless negligence can be established; the more recent bailment cases, however, imply an involuntary bailment for mutual benefit and hold the employer liable.

For example, *Johnson & Towers* v. *Babbington* (1972) 264 Md. 724 [288 A.2d 131], is almost factually identical to the instant case: the employees were required to furnish their own tools and it was impractical for them to take home a full tool box because of its weight; the employees' tools, stored in the work area, were taken in a weekend burglary.[5] The employer conceded that it was a bailee for mutual benefit and therefore under a duty to use ordinary care. The jury was so instructed. The appellate court in affirming the judgment on the verdict for the employees pointed out that the employer's negligence was a question of fact and that there was legally competent evidence from which the jury could infer that the employer had failed to exercise ordinary care and this failure was the proximate cause of the injury. (Cf. *Lissie* v. *Southern New England Telephone Co.* (1976) 33 Conn.Supp. 540 [359 A.2d 187, 189] (bailment for mutual benefit created where employee left coat in designated area).)

*Collins* v. *Boeing Company* (1971) 4 Wn.App. 705 [483 P.2d 1282, 46 A.L.R.3d 1294], also involved the theft of the employee's tools from the premises of the employer. The tools belonged to the employee, were kept in his locked box and weighed about 80 pounds; some of the tools were required by the employer; additional ones were voluntarily supplied by the employee; the evidence did not disclose the weight of the employer-required tools and the employee-added ones. Boeing supervisors periodically required employees to undergo toolbox inspections on exit and ingress in order to check the presence of Boeing tools and as part of the 24-hour-a-day security arrangements. While we do not agree with the conclusion of no duty of care reached by the *Boeing* court, we have found its careful examination of public policy alternatives helpful in construing our statutes.

The *Boeing* court reasoned that there was no bailment for mutual benefit and hence no duty of care by the employer because the basic reason for the presence of the tools on the premises was the convenience of the employee, although there was an incidental benefit to the employer through the reduction of exit and ingress delays and a possible speedup in work because of the additional tools supplied by the employee.

The *Boeing* court also noted that no bailment was created as the employee had not surrendered possession to the employer and the employee was in a better position to exercise control than the employer. The court opined, however, that the employer's ingress and egress inspection requirements and security measures might suggest a change of control and assumption by the employer of

---

[5]There was also evidence that the locks on the premises of the employer were ineffective and that three to four prior attempts had been made to enter the locked premises where the tools had been kept, at least one of them successful.

a duty of ordinary care to prevent theft by a third person. In reaching a conclusion of no duty of care, the court relied upon factors not present here: (1) from the inception of the employment relationship, without objection from the employee and consistent with industry practice, the employer had disclaimed liability for theft by third person; and (2) the employee knew at all times that the employer provided no receptacles or lockable enclosures, and the union had never objected to the employer's initial and continuing policy of nonliability. Thus, the court found that the voluntariness of the agreement of nonliability had not been challenged, and further pointed out that if an involuntary or constructive gratuitous bailment had arisen, the employer's duty would have been discharged by slight care.

In any event, unlike the court in *Boeing,* or those jurisdictions that have utilized a bailment analysis to reject the employer's liability (for a recent example, see *Farmer* v. *Machine Craft, Inc.* (Ala.App. 1981) 406 So.2d 981, and see other cases collected at 46 A.L.R.3d 1306, *supra*), we are faced with construing sections 2800,[6] 2802 and the recently added section 2800.1.[7] The legislative history of the most recently added provision is shrouded in mystery. Arguably, by application of the doctrine of *ejusdem generis* (expression of one thing excludes another), the specific mention of an employer's duty to safeguard an employee's musical instruments excludes such a duty as to any other tools of the trade owned or provided by an employee. However, a converse maxim of statutory construction states that the language of a statute may fairly comprehend many different cases where only some are expressly mentioned by way of example. (*Springer* v. *Philippine Islands* (1928) 277 U.S. 189 [72 L.Ed. 845, 48 S.Ct. 480].) The fact that section 2800.1 is in this latter category is readily apparent when it is read in the context of, and construed together with, sections 2800 and 2802. Sections 2800, 2800.1 and 2802 must be harmonized and construed together. (Code Civ. Proc., § 1859; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) Section 2800 provides: "An employer shall in all cases indemnify his employee for losses caused by the employer's want of ordinary care"; section 2802, as indicated above, provides for indemnity for losses in direct consequence of the discharge of the employee's duties.

---

[6]Section 2801 pertains to personal injury actions.

[7]This section, added by Statutes 1973, chapter 497, section 1, page 972, provides: "An *employer shall in all cases take reasonable and necessary precautions to safeguard musical instruments and equipment, belonging to an employed musician, located on premises under the employer's control. In the event such equipment is* damaged or *stolen* as a result of the employer's failure or refusal to take such reasonable and necessary precautions, *the employer shall be liable to the owner for repair or replacement* thereof if the employed musician has taken reasonable and necessary precautions to safeguard the musical instruments and equipment.

"For the purposes of this section: (a) 'employer' includes a purchaser of services and the

Here admittedly Bowers' tools were so heavy that he had no option but to leave them in the inner room on the premises provided by the Employer. Further, by its inspection requirements and security provisions the Employer exercised a substantial amount of control over Bowers' tools. Our Supreme Court has indicated that "legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done." (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, at p. 434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].)

██  We hold that section 2802 applies where, as here, the custom of the trade requires the employee to supply his own tools for the performance of his duties, and while the employer does not require the employee to leave his tools on the employer's premises, the tools are too heavy to be transported routinely to and from the place of employment. Bowers' tools were left locked on the premises in the inner room provided by the Employer. The loss therefore was incurred in direct consequence of the discharge of the employee's duties, and was therefore incidental to his employment. (Cf. *Waugh* v. *University of Hawaii* (1980) 63 Hawaii 117 [621 P.2d 957, 970-971], university held to have duty of ordinary care toward professor's laboratory research materials left in its care during a sabbatical on the basis of the general rule that all persons are required to use ordinary care to prevent the property of others from being injured.)

We conclude that when section 2802 is construed with sections 2800 and 2800.1, it provides Bowers a statutory right to indemnity for the loss incurred in direct consequence of the employment.

The judgment is reversed.

Appellants shall have their costs on appeal.

White, P. J., concurred.

**BARRY-DEAL, J.**—I dissent.

The record of arbitration proceedings shows that during the 1977 contract negotiations between the union and employer, the union proposed that the employer, in effect, be required to provide "Tool Insurance" (straight reimbursement for loss), and that the employer refused to place a provision of this

owner of premises upon which an employed musician is working; and (b) 'employee' is any employed musician working on premises which are under an employer's control." (Italics added.)

kind in the contract. The arbitrator found that Bowers was not entitled to reimbursement for his stolen tools under the contract. Bowers now asks this court to construe Labor Code section 2802 as imposing such a "Tool Insurance" on employer. I cannot agree with the majority's interpretation of that section as doing so. Rather, as I read the statutory scheme here in question, employer's liability, if any, for Bowers' loss of tools must be pursuant to Labor Code section 2800, not section 2802.

Labor Code section 2800 provides, "An employer shall in all cases indemnify his employee for losses caused by the employer's want of ordinary care." It is significant that when the Legislature enacted section 2800.1 (musician's instruments), it placed the new statute directly after section 2800, indicating that it is a specific example of the kind of negligence for which an employer must indemnify an employee under section 2800, not section 2802. The analogy between a musician whose instrument is left on the employer's premises and a mechanic whose tools are left at his place of employment is clear. In either case the worker is entitled to recover for loss occasioned by the employer's negligence.

Labor Code section 2802, on the other hand, imposes strict liability, but only for "all that the employee necessarily expends or loses in direct consequence of the discharge of his duties as such, . . ." I believe the majority reaches an incorrect result by placing undue emphasis on the term "direct consequence" and failing to consider the entire context in which that term appears. Thus, while it cannot be seriously argued that Bowers' loss would not have occurred but for his employment, neither can it be said that the weekend burglary of Employer's premises resulted in a loss which Bowers *"necessarily"* incurred *"in direct* consequence of the *discharge* of his duties *as such, . . ."* (Italics added.)

Cases arising under Labor Code section 2802 are few. Those decisions construing the statute indicate that it was intended to cover such necessary expenditures and losses as those incurred by reason of a salesman being sent to various counties to sell goods (see *Automobile etc. Co.* v. *Salladay* (1921) 55 Cal.App. 219 [203 P. 163]) or those incurred by a reporter defending a suit by a third person for his conduct in the course and scope of his employment (*Douglas* v. *Los Angeles Herald-Examiner* (1975) 50 Cal.App.3d 449 [123 Cal.Rptr. 683]).

If Bowers had suffered loss or damage to his tools while he was working, Labor Code section 2802 would apply. But where, as here, the loss was one which did not "necessarily" occur as a "direct consequence" of his work "as such," the Employer should be liable only for loss occasioned by lack of ordinary care under section 2800.

To this extent, I believe that *Earll* v. *McCoy* (1953) 116 Cal.App.2d 44 [253 P.2d 86] correctly held that loss to fire of tools left on the premises did not come within the purview of Labor Code section 2802.

I would therefore hold that Bowers could only recover for loss of his tools under Labor Code section 2800, and I would remand the cause for consideration of the question whether the loss was occasioned by employer's want of ordinary care.

Respondent's petition for a hearing by the Supreme Court was denied May 19, 1983. Grodin, J., did not participate therein.