**John DESOTO, Plaintiff/Appellee,**

v.

**YELLOW FREIGHT SYSTEMS, INC., Defendant/Appellant.**

**Nos. 85–6608, 86–5800.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1986.

Decided March 4, 1987.

As Amended June 30, 1987.

Theodore W. Russell, John C. Russell, Los Angeles, Cal., Ronald E. Sandhaus, Overland Park, Kan., for defendant-appellant.

Robert D. Newman, Los Angeles, Cal., for plaintiff-appellee.

Richard W. Smith, Sacramento, Cal., for amicus curiae.

Before ALARCON, BRUNETTI and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

John DeSoto, a resident of California, brought an action against Yellow Freight Systems, Inc. (Yellow Freight), an Indiana corporation, and assorted unknown Does alleging that he had been wrongfully discharged because he refused to commit a violation of law. He also sued Yellow Freight under Section 301 of the Labor Management Relations Act, 29 U.S.C. Section 185 appealing a decision of the grievance committee which sustained his discharge.

The action was brought in a superior court of the State of California. On motion of Yellow Freight it was removed to the federal court. The district court granted summary judgment for DeSoto on both counts. We reverse and enter judgment for the defendant.

*Events.* John DeSoto, age 33, had been working for Yellow Freight for almost six years. He was employed as a heavy duty pickup and delivery driver at the Washington Boulevard terminal of Yellow Freight in Los Angeles. He was one of three trustees of Local 208 of the Teamsters Union and one of five union stewards at the Los Angeles terminal.

On March 7, 1984 he returned to work after having been on leave to bury his mother. He was assigned a trailer which he thought was not properly registered and which had a defective door. He informed the dispatcher and was given another trailer, No. 19563. He found it to contain Illinois registration papers with an expiration date of December 31, 1983 and a prorated vehicle tag for California which had expired on the same date. He objected that it would be illegal to drive without further documentation. He was given a letter from the company stating that the California prorated sticker for 1984 had been lost and that Yellow Freight accepted any responsibility for lack of registration. DeSoto still refused to drive the trailer.

Brian Sibley, the branch manager of Yellow Freight, then gave DeSoto a warning letter that he would be fired if he did not obey the order to drive. After about one-

half hour of indecision, DeSoto agreed to drive No. 19563, but he then got the impression that others in the office were laughing at him and he changed his mind and refused to take out the trailer. Sibley discharged DeSoto.

In May 1984 the union presented DeSoto's grievance before the Joint Western Area Committee consisting of an equal number of representatives of management and labor. The Committee without opinion, sustained his discharge. DeSoto then brought his case in the state court.

*Issues:* Did DeSoto state a good federal cause of action? Was the pendent state claim properly heard?

*Analysis:* Under the collective bargaining agreement between Yellow Freight and the Teamsters (Western State Area Pickup and Delivery Local Cartage and Dock Workers Supplemental Agreement Covering Drivers Employed by Private, Common and Contract Carriers, 1982–1985), an employer may not discharge an employee "without just cause and without giving a warning notice in writing." A grievance procedure sets out that any dispute shall first be taken up between the employer and the local union involved. If they fail to agree, the dispute is to be filed with the Joint State Committee. If this committee is unable to agree, the case at the request of the union or the employer is to be filed with the Joint Western Area Committee. A majority vote of this Committee is "final and binding upon the parties to the dispute and the employee(s) involved."

■ The Supreme Court has determined that an employee may not sue the employer under Section 301 of the Labor Management Relations Act where a grievance procedure has been followed and the decision has been against him unless the employee can show that the union failed to represent him in the proceeding. An employee seeking to bring suit in the federal courts has "the burden of demonstrating breach of duty by the Union." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976). Even if the charges against him were false and he was fired without cause, an employ-

ee in this position cannot expect the grievance procedure "to be error free." *Id.* at 571, 96 S.Ct. at 1059. If the union has fairly represented him in the grievance process, an employee must as a matter of law lose in an attack upon the arbitration decision. In this case, where DeSoto was an officer of the local, there is not the slightest suggestion that the union failed to prosecute his grievance or that the union acted in bad faith. DeSoto had a hearing before the ultimate grievance committee, and he lost. His federal case is meritless.

■ The question remains whether the district court should have retained jurisdiction of the pendent state claim. Such jurisdiction is discretionary, its justification lying "in considerations of judicial economy, convenience and fairness to litigants." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Where the state claim is closely tied to questions of federal policy, the argument for the exercise of pendent jurisdiction "is particularly strong," especially so where "the allowable scope of the state claim implicates the federal doctrine of preemption." *Id.* at 727, 86 S.Ct. at 1139. The present case is one where the state claim does implicate the federal doctrine of preemption. Exercise of federal discretion over the state claim was appropriate.

In *Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367 (9th Cir.1984), *cert. denied* 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985) our court in a case of first impression ruled that the Labor Management Relations Act did not preempt a state tort claim for wrongful discharge. In that case the plaintiff alleged that he had been wrongfully discharged because of reporting to health officials a shipment of adulterated milk after his supervisors had ordered him to deliver it. The court found that his whistle blowing "to protect the health and safety of the citizens of California" was "exactly the type of conduct" that the California Supreme Court intended to protect in recognizing a tort action for discharge because of obedience to a state statute. *Id.* at 1374. Our court said more generally that "a claim grounded in state

law for wrongful termination for public policy reasons poses no significant threat to the collective bargaining process.... It furthers the state's interest in protecting the general public—an interest which transcends the employment relationship." *Id.* at 1375. Our court found support for its result in *Machinists Automotive Trades District Lodge No 190 v. Utility Trailer Sales,* 141 Cal.App.3d 80, 190 Cal.Rptr. 98, *appeal dismissed for want of a substantial federal question,* 464 U.S. 1005, 104 S.Ct. 520, 78 L.Ed.2d 785 (1983).

*Machinists* and *Garibaldi* must be now read in the light of *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), holding that a state tort claim was precluded by § 301 of the Labor Management Relations Act. The Court observed, "Since nearly any alleged willful breach of contract can be restated as a tort claim for breach of a good faith obligation under a contract, the arbitrator's role in every case could be bypassed easily if Section 301 is not understood to permit such claims. Claims involving vacation or overtime pay, work assignment, unfair discharge—in short, the *whole* range of disputes traditionally resolved through arbitration could be brought in the first instance in state court by a complaint in tort rather than in contract. A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness." *Id.,* 105 S.Ct. at 1915–1916.

Since the argument of the present case, the pre-emptive force of § 301 of Labor Management Relations Act has been emphasized by the Supreme Court. *Pilot Life Insurance Co. v. Dedeaux,* — U.S. —, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Insurance Co. v. Taylor,* — U.S. —, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In the course of holding that ERISA pre-empted state common law tort actions for fraud, the court took notice of the language of Congress pre-empting such actions:

All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947. H.R.Conf.Rep. No. 93–1280, p. 327 (1974), quoted in *Pilot Life* at 13.

The Court went on to say:

Congress was well aware that the powerful pre-emptive force of § 301 of LMRA displaced all state actions for violation of contracts between an employer and a labor organization, even when the state action purported to authorize a remedy unavailable under the federal provision.

Analogously in *Metropolitan Life* the Court found a state claim for wrongful termination of employment to be pre-empted by ERISA. On its face, the complaint was simply for violation of state law, but the court found that the federal statute's "extraordinary pre-emptive power, such as has been found with respect to § 301 of the LMRA" converted an ordinary state common law complaint into a federal claim. *Metropolitan Life* at —, 107 S.Ct. at 1547. *Pan American Airways v. Puchert,* 472 U.S. 1001, 105 S.Ct. 2693, 86 L.Ed.2d 710 (1985) is not to the contrary: Puchert claimed to have been discharged in contravention of a specific state statute prohibiting discharge; the area protected by the statute was not covered by the LMRA. *Puchert* like *Garibaldi* was a special exception to the pre-emptive power of the LMRA.

In the present case DeSoto alleges that he was being ordered to disobey state law, and he bases his claim not on the collective bargaining agreement but on the alleged tort. As in *Garibaldi,* it is possible to say that the tort is distinct from any claim based on the collective bargaining agreement. As in *Allis-Chalmers,* it is possible to define the tort as independent of the contract and yet conclude that "a central tenet of federal labor contract law under Section 301 will be eviscerated" if the state action is permitted as an end run around the grievance procedure. *Id.,* 105 S.Ct. at 1916.

Unlike Garibaldi, DeSoto was not fired because of obedience to a state statute designed to protect the health of the citizens of California. He was fired because he had in good faith believed that it was illegal for him to drive the trailer without the requisite permits in the truck. In fact, he was mistaken in his belief. Under an agreement between the state of Illinois and the state of California, there was a grace period which extended until May 1984, during which the California pro-rate sticker did not have to be displayed in the truck. *Directive, California Department of Motor Vehicles*, Jan. 4, 1984, R. Hagan, Chief, Registration & Investigative Services (120 day grace period before Illinois commercial vehicles are required to display indicia of registration). Unquestionably, DeSoto thought he was doing the right thing in refusing to take the trailer out. Unfortunately for him, he was mistaken. He was not acting in defense of a public policy of the state of California, but incorrectly asserting his own interpretation of the law. It is just this kind of dispute over what is the appropriate management response to difficult behavior by an employee that should be the subject of a grievance procedure. It is not the kind of case that should become either a federal case or a state tort action. Harmonious relations between management and labor depend on the grievance procedure being final in this kind of dispute. DeSoto's state claim is preempted by Section 301 and fails as his Section 301 claim fails.

REVERSED. Judgment for the Defendant.