John GARIBALDI, Plaintiff-Appellant,

v.

LUCKY FOOD STORES, INC.,
Defendant-Appellee.

No. 83–5686.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1983.

Decided Feb. 27, 1984.

Eric W. Doney, Donahue, Gallagher, Thomas & Woods, Oakland, Cal., for defendant-appellee.

Fred J. Knez, Banks, Leviton, Kelley, Drass & Kelsey, Inc., Santa Ana, Cal., for plaintiff-appellant.

Before FLETCHER and NELSON, Circuit Judges, and PRICE,* District Judge.

FLETCHER, Circuit Judge:

Plaintiff, John Garibaldi, an employee suing for damages in connection with an alleged wrongful discharge, appeals from a summary judgment in favor of his employer, defendant Lucky Food Stores. We reverse on the grounds that the action was improperly removed from state court and that the district court lacked jurisdiction. The case turns on whether plaintiff's claims are preempted.

---

\* Hon. E. Dean Price, United States District Judge for the Eastern District of California, sitting by designation.

1. The timeliness of removal is not contested on appeal. The District Court held that the de-

## I
## FACTUAL BACKGROUND

Garibaldi was employed by Lucky Food Stores beginning in October 1969 as a boxboy. After a three-year leave of absence for military service from 1970 to 1973 he returned as a journeyman clerk. In April, 1977 he was transferred to the position of truck driver, in which position he continued until he was discharged in October 1980.

Garibaldi alleges that his discharge was wrongful and was the culminating act of a pattern of harassment arising out of an incident that occurred on March 27, 1979. Garibaldi noticed that the load of milk he was delivering was spoiled. He reported this to his employer, who instructed him to go ahead and deliver the milk. Instead, he notified the local health department, which condemned the milk and ordered that it not be delivered.

At all times relevant to this action Garibaldi was a member of the International Brotherhood of Teamsters, Warehousemen and Helpers of America, Local 952 (Teamsters Union) and was covered by a collective bargaining agreement. When he was discharged on October 23, 1980, he filed a grievance that was processed through arbitration. The arbitrator found that he was discharged for cause.

On October 2, 1981, Garibaldi filed a complaint in California Superior Court for damages for bad faith, wrongful termination and intentional infliction of emotional distress. He alleged that he was discharged in violation of the public policy of the State of California because of his report to the health authorities.

After the complaint had been filed, but before service, Lucky Food Stores removed the case to federal court. Garibaldi moved to remand the case to state court. The district court held that the removal was timely [1] and that it had jurisdiction over the

---

fendant could remove upon receipt of complaint "by service or otherwise" according to the statute. Since Lucky Food Stores received a copy of the complaint through some means, it could seek removal. *See Love v. State Farm*

first cause of action for wrongful termination under 29 U.S.C. § 185 (§ 301 of the Labor Management Relations Act (LMRA)),[2] on the basis of *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209 (9th Cir. 1980). The court apparently retained jurisdiction of the second cause of action for intentional infliction of emotional distress under the doctrine of pendent jurisdiction.

Lucky Food Stores then filed a motion to dismiss the first cause of action on statute of limitations grounds, which it argued was 100 days, based on its characterization of the suit as an appeal from an arbitrator's award.[3] The district court treated the motion as one for summary judgment, granted judgment on the first cause of action and remanded the second cause of action to state court. Garibaldi appealed.

## II

### ISSUES PRESENTED

Lucky Food Stores argues that removal was proper and that a state action for wrongful termination is preempted by the LMRA. Garibaldi argues that his claim is not preempted, and, in any event, removal based on preemption is improper. Both concede that the proper statute of limitations is determined by the resolution of the preemption issue. Since we hold that Garibaldi's claim is not preempted we need not decide whether removal based on preemption would be improper.[4]

---

*Mutual Auto Ins. Co.,* 542 F.Supp. 65, 67–68 (N.D.Ga.1982); *Tyler v. Prudential Insurance Co.,* 524 F.Supp. 1211, 1213 (W.D.Pa.1981).

2. Section 301(a) states that

    Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

    29 U.S.C. § 185(a) (1976). The Supreme Court has held that the purpose of this statute was to require the federal courts to fashion a uniform body of federal law for the enforcement of national labor laws. *See Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957); *Local 174, Teamsters v. Lucas Flour,* 369 U.S. 95, 103–06, 82 S.Ct. 571, 576–78, 7 L.Ed.2d 593 (1962).

3. *See* Cal.Civ.Proc.Code § 1288 (West 1982). This statute of limitations is not applicable except to the extent that it may be applicable in state court to other than section 301 claims. *See Del Costello v. Teamsters Union,* —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (holding that the statute of limitations applicable to a section 301 suit was the same as that which applies to suits against an employer for breach of the collective bargaining agreement).

4. The second cause of action for intentional infliction of emotional distress is not before this court. Although Lucky Food Stores asks us to hold that this claim is preempted also, it has not cross-appealed the remand of that cause of action. To the extent that Lucky Food Stores urges preemption of this cause of action as an alternate basis for jurisdiction, we reject the argument. The alleged tort is not the "artful pleading" of a federal claim. *See* discussion *infra.* Whether a claim for intentional infliction of emotional distress is preempted by the NLRA depends on the degree of outrageousness of the conduct and the manner in which the conduct was performed. *See Farmer v. United Brotherhood of Carpenters,* 430 U.S. 290, 305–06, 97 S.Ct. 1056, 1066, 51 L.Ed.2d 338 (1977); *Beers v. Southern Pacific Transportation Co.,* 703 F.2d 425, 429 (9th Cir.1983). Since preemption is a defense in this context and the federal question cannot be raised affirmatively on the face of the complaint, this cause of action is not a basis for removal. *See* discussion *infra.* Our decision in *Beers v. Southern Pacific Transportation Co.,* 703 F.2d 425, does not suggest otherwise since the plaintiff in that case failed to object to removal. *See Grubbs v. General Electric Credit Corp.,* 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). Furthermore, Beers' complaints "referred to work conditions, disciplinary procedures, representation rights covered by or substantially related to the collective bargaining agreement." By contrast, Garibaldi alleges that the emotional distress arose out of a claim that is not preempted. We recognize, however, that the facts may not support his allegations and that his claim may be preempted under the *Farmer* analysis. The final resolution of the preemption issue as to this cause of action is for the state court. We decide only that this is not a possible alternate ground for federal jurisdiction.

## III

## DISCUSSION

### A. Removal Jurisdiction Rests on a Federal Claim Stated in Complaint.

Removal of an action under 28 U.S.C. § 1441(b) (1976) depends solely on the nature of the plaintiff's complaint, and is properly removed only if "a right or immunity created by the Constitution or laws of the United States [constitutes] an element, and an essential one, of the plaintiff's cause of action." *Gully v. First National Bank in Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). The plaintiff is the master of his or her own complaint and is free to ignore the federal cause of action and rest the claim solely on a state cause of action. *See The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913); *Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir.1976); *La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339, 346 (3d Cir. 1974), cert. denied, 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94 (1975). Based on these propositions, it follows that "a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby." *Gully v. First National Bank*, 299 U.S. at 116, 57 S.Ct. at 99.

However, where the state claim has been preempted by federal law, it does not follow that the federal court has jurisdiction. This circuit has repeatedly held that preemption, as a defensive allegation, is not grounds for removal. *See Nalore v. San Diego Federal Savings and Loan Association*, 663 F.2d 841, 842 (9th Cir.1981), cert.

denied, sub nom. *Great American Federal Savings and Loan Association v. Nalore*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982); *Guinasso v. Pacific First Federal Savings & Loan Association*, 656 F.2d 1364, 1367 (9th Cir.1981), cert. denied, 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982); *Washington v. American League of Professional Baseball Clubs*, 460 F.2d 654, 660 (9th Cir.1972).

Although ordinarily a preempted claim may not be removed to federal court, the "artful pleading" doctrine provides the rationale for the assertion of federal jurisdiction in some cases. *See generally* Wright, Miller & Cooper, *Federal Practice and Procedure* § 3722 (1976). This doctrine allows the removing court to look at the true nature of the plaintiff's complaint when the plaintiff has attempted to avoid a federal cause of action by relying solely on state law in the complaint. *See Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir.1983). We have followed this doctrine in allowing removal based on preemption in certain labor cases. *See Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189; *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1211–12 (9th Cir.1980); *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367, 1369 (9th Cir.), cert. denied, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978); *Johnson v. England*, 356 F.2d 44 (9th Cir.), cert. denied, 384 U.S. 961, 86 S.Ct. 1587, 16 L.Ed.2d 673 (1966).

Lucky Food Stores asserts that the suit is properly removed under the artful pleading doctrine because Garibaldi's claim is preempted. However, Lucky Food Stores has missed the second step in the analysis.[5]

---

5. At first glance, it may seem contradictory that in *Fristoe* and *Schroeder* we accepted jurisdiction although we decided that the claims were preempted and in *Guinasso* and *Nalore* we dismissed for lack of jurisdiction *because* the claims were preempted. The difference lies in the nature of the claims made.

The distinction between an artfully pled complaint and one that is preempted, but not removable, lies in whether the removing court must "look beyond plaintiff's complaint, to the petition for removal or the answer, to find a federal question" or whether "the facts alleged

were sufficient to state a federal cause of action" on the face of the complaint. *State of California v. Glendale Federal Savings and Loan Association*, 475 F.Supp. 728, 732 (C.D. Cal.1979). The former is not removable; the latter is removable because artfully pled.

In *Schroeder*, the employees filed an action in state court alleging that TWA was engaged in unlawful business practices not authorized by the collective bargaining agreement and that these practices violated the California Business and Professions Code. The court observed that it was clear that the plaintiffs were attempting

## B. *A Wrongful Termination Claim Based on State Public Policy is Not Preempted.*

The issue of whether a claim for wrongful termination based on violation of state public policy is preempted by the LMRA is one of first impression.[6] In *Guinasso v.* *Pacific First Federal Savings and Loan Association,* 656 F.2d 1364 (9th Cir.1981), *cert. denied,* 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982), however, we engaged in the inquiry that we should undertake in this case: Does the federal statute and regulatory scheme leave room for state regula-

.to *avoid* federal law and that *exclusive* jurisdiction over disputes under the Railway Labor Act existed in federal court.

Similarly, in *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, the plaintiff filed a breach of contract action in state court after going through grievance procedures. The court held that the "recharacterization of Fristoe's complaint as one arising under § 301 is required by federal preemption doctrines." 615 F.2d at 1212. Thus, removal was proper because an allegation of breach of a collective bargaining agreement *states on its face* an action under the LMRA.

In both *Schroeder* and *Fristoe,* the essence of the argument was that "federal law not only displaces state law but also confers a federal remedy on the plaintiffs or compels them to rely, explicitly or implicitly, on federal propositions." *Guinasso v. Pacific First Federal Savings & Loan Association,* 656 F.2d 1364, 1367.

By contrast, in *Nalore v. San Diego Federal Savings & Loan Association,* 663 F.2d 841, the plaintiff claimed that state law precluded a "due-on-sale" clause in a promissory note and trust deed. The defendant bank argued that the federal law preempted state prohibition of due-on-sale clauses, not that any such allegation stated a cause of action under federal law. Similarly, in *Guinasso v. Pacific First Federal Savings and Loan Association,* 656 F.2d 1364, the plaintiff brought suit under Oregon common law for breach of contract, breach of trust duties, and unjust enrichment to recover interest on escrow accounts. The bank argued that regulations of the Federal Home Loan Bank Board preempted the Oregon claims. In both of these cases, the preemption argument focused on the proposition that the state could not regulate the field, not that the complaint stated a federal cause of action. The preemption was *defensive* and not proper grounds for removal. Thus, in this case, instead of dismissing the case initially under the proposition that preemption cannot be a basis for removal, we look to the substance of Garibaldi's claim to see if it states on its face a federal cause of action, *i.e.,* if federal law requires Garibaldi to rely on a federal remedy in this case. Labor law is not an area where federal law totally occupies the field. *See Vaca v. Sipes,* 386 U.S. 171, 180, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967).

**6.** We note that two district courts in this circuit have considered similar, but distinguishable is-

sues. In *Taylor v. St. Regis Paper Co.,* 560 F.Supp. 546 (C.D.Cal.1983), the plaintiff alleged wrongful discharge and breach of covenant and fair dealing and that he was discharged in retaliation for filing worker's compensation claims. The district court held the contractual claims preempted, which is consistent with the distinctions made in this opinion. The court did not address the preemption of the retaliatory discharge claim under federal labor law, for it found that the California Worker's Compensation Appeal Board has exclusive jurisdiction over the charge. By implication the cause of action was not preempted. Similarly, in *Sklios v. Brotherhood of Teamsters,* 503 F.Supp. 123 (N.D.Cal.1980); *rev'd on other grounds,* 672 F.2d 923 (9th Cir.1980), the court held that a cause of action for wrongful discharge in violation of a collective bargaining agreement was preempted by section 301 of the LMRA. *See Fristoe,* 615 F.2d at 1212.

We note that the Seventh Circuit recently held that a state claim for retaliatory discharge was preempted by the Railway Labor Act (RLA), 45. U.S.C. § 153 (1976). *Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045, (7th Cir.1983), *cert. denied,* ⸺ U.S. ⸺, 104 S.Ct. 1000, 78 L.Ed.2d 233 (1984). Although the court reached the opposite result from our holding, the court's analysis is entirely consistent with ours. The plaintiff in *Jackson* alleged that he was fired in retaliation for filing a claim under the Federal Employee's Liability Act, 45 U.S.C. §§ 51–60 (FELA) in violation of Texas state law. In discussing *Farmer* and *Sears Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), the court applied the same analysis we use here—examining the state interest involved and the potential for interference with the federal scheme. 717 F.2d at 1051–54. It found that the RLA provides a stronger case for preemption than the NLRA. 717 F.2d at 1052. *See Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367 (9th Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). The court recognized that under the NLRA, "it is the *objective* of certain conduct, rather than the mere *exercise* thereof, that is relevant to determining whether actions are prohibited by the NLRA." *Id.* (emphasis added). We note the similarity between *Jackson* and the recent Ninth Circuit case of *Schroeder v. Trans World Airlines,* 702 F.2d 189 (9th Cir.1983).

tion? In *Guinasso,* the plaintiff brought suit under Oregon common law for breach of contract, breach of trust duties, and unjust enrichment to recover interest on escrow accounts. The bank argued successfully that regulations of the Federal Home Loan Bank Board preempted the Oregon claims. *See also Nalore v. San Diego Federal Savings and Loan Association,* 663 F.2d 841 (9th Cir.1981) *cert. denied, sub nom. Great American Federal Savings and Loan Association v. Nalore,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982). Here we examine the sweep of the LMRA.

The district court in the case before us concluded that *Fristoe v. Reynolds Metal Co.,* 615 F.2d 1209 (9th Cir.1980) compelled removal to federal court. Both *Fristoe* and our case are labor cases. In both, the employee submitted his grievance to arbitration; in both, the plaintiff sought damages for wrongful discharge. But a significant difference exists between this case and *Fristoe:* Fristoe sought damages for breach of a collective bargaining agreement, while Garibaldi rests his claim for wrongful discharge on violation of state policy. The *Fristoe* court recharacterized Fristoe's complaint as necessarily an assertion of a violation of section 301 of the LMRA and therefore an assertion of a federal claim. Our task is to decide whether a claim for wrongful termination based on violation of state public policy must also be characterized as a federal claim. Although we have no section 301 case the Supreme Court has provided a great deal of guidance in recent cases dealing with preemption under the National Labor Relations Act (NLRA).

1. *The Test for Preemption in The Labor Field.*

In *New York Telephone Co. v. New York State Dept. of Labor,* 440 U.S. 519, 99 S.Ct.

1328, 59 L.Ed.2d 553 (1979), the Supreme Court considered the question of whether the NLRA prohibited the State of New York from paying unemployment compensation to strikers. The Court held that the New York law was not preempted, even though the plurality recognized that the law provided financial support to striking employees and added to the burdens of struck employers. 440 U.S. at 531, 99 S.Ct. at 1336.[7] Nonetheless, the plurality recognized that

> [a]lthough the class benefitted is primarily made up of employees in the State and the class providing the benefits is primarily made up of employers in the State, and although some of the members of each class are occasionally engaged in labor disputes, the general purport of the program is not to regulate the bargaining relationships between the two classes but instead to provide an efficient means of insuring employment security in the State.

440 U.S. at 532–33, 99 S.Ct. at 1336–37. Justices Blackmun and Marshall concurred, stating that "[t]he crucial inquiry is whether the exercise of state authority 'frustrate[s] effective implementation of the Act's processes, . . .'" 440 U.S. at 550, 99 S.Ct. at 1346 (Blackmun, J., concurring). Justice Brennan appeared to be in general agreement with the plurality's test, although he based his concurrence on the legislative history. *See* 440 U.S. at 546–47 n. *, 99 S.Ct. at 1344 n. * (Brennan, J., concurring). The distinction between the two approaches seems to be one of emphasis. Justice Blackmun characterized the plurality opinion as assuming that preemption is absent "unless 'compelling congressional direction' indicates otherwise," and asserts that his approach is that preemption

---

7. The plurality adopted the test set forth in Cox, *Recent Developments in Labor Law Preemption,* 41 Ohio St.L.J. 277 (1980). *See New York Telephone,* 440 U.S. at 532–33, 99 S.Ct. at 1336–37. Professor Cox argues that in enacting federal labor laws Congress intended to preempt only state laws regulating collective activity, not state laws of general applicability. *See* Cox, *supra* at 1355. This view was not

adopted by the whole court. Although Justice Brennan seemed to be in partial agreement, Justices Blackmun and Marshall clearly disagreed, as did Justices Powell, Stewart, and the Chief Justice in their dissent. The result we reach here would meet the Cox test. *See* Comment, *NLRA Preemption of State Wrongful Discharge Claims,* 34 Hast.L.J. 635, 657, 659–62 (1983).

is present unless evidence exists that Congress intended otherwise. 440 U.S. at 549, 99 S.Ct. at 1345 (Blackmun, J., concurring).

Regardless of where one places the emphasis, the essence of the exercise is a balance of state and federal interests. In *Farmer v. United Brotherhood of Carpenters and Joiners,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), the court held that the NLRA did not preempt a tort action for intentional infliction of emotional distress under California law.

> Our cases indicate, however, that inflexible application of the doctrine [of preemption in industrial relations] is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme.

> \* \* \* \* \* \*

> The State ... has a substantial interest in protecting its citizens from the kind of abuse of which Hill complained. That interest is no less worthy of recognition because it concerns protection from emotional distress caused by outrageous conduct, rather than protection from physical injury, as in *Russell [Automobile Workers v. Russell,* 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958) ], or in damage to reputation, as in *Linn [v. Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) ]. Although recognition of the tort of intentional infliction of emotional distress is a comparatively recent development in state law ..., our decisions permitting state jurisdiction in tort actions based on violence or defamation have not rested on the history of the tort at issue, but rather on the nature of

the State's interest in protecting the health and well-being of its citizens.
430 U.S. at 302–03, 97 S.Ct. at 1064–65 (citations omitted).

The Court was nonetheless careful to limit its holding. The conduct alleged must be "outrageous" and the tort, if occurring in the employment relationship, must be "a function of the particularly abusive manner in which the discrimination is accomplished rather than a function of the actual or threatened discrimination itself." 430 U.S. at 305, 97 S.Ct. at 1066.

To apply the *Farmer* approach to the case at hand we must look at the nature of the State interests involved.[8]

### 2. California Wrongful Termination Law.

■ An action for wrongful termination exists under California law in three circumstances: when the termination would violate (1) public policy, (2) a statute, or (3) an express or implied contract term that the employee was hired to serve so long as he or she performed to the satisfaction of the employer. *See Cleary v. American Airlines,* 111 Cal.App.3d 443, 450, 168 Cal.Rptr. 722, 726 (1980); *Patterson v. Philco Corp.,* 252 Cal.App.2d 63, 65, 60 Cal.Rptr. 110 (1967).[9]

■ The public policy exception was established by the California Supreme Court in *Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980), where the court allowed a cause of action for wrongful discharge arising out of the plaintiff's refusal to fix retail gasoline prices in violation of federal law. The Court held that an "employer cannot condition employment upon required participation in unlawful conduct by the employee." 27 Cal.3d at 178, 164 Cal.Rptr. at 845, 610 P.2d at 1330. The court recognized that the

---

8. This approach is consistent with the approach taken by this circuit in *Beers v. Southern Pacific Transport Co.,* 703 F.2d 425 (9th Cir.1983).

9. Lucky Food Stores argues that California wrongful termination law does not apply to union employees. That issue has never been addressed by the California courts. We see nothing in the cases addressing wrongful termi-

nation in violation of public policy that suggests the distinction. The argument would have considerable force in a case such as *Cleary v. American Airlines,* 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980). Absent California law to support Lucky Food Stores' contention, we decline to look beyond Garibaldi's assertion of a state law claim. Removal is judged by the face of the complaint.

"employer's obligation to refrain from discharging an employee who refuses to commit a criminal act does not depend on any express or implied ' "promises set forth in the [employment] contract" ' . . ., but rather reflects a duty imposed by law upon all employers in order to implement the fundamental public policies embodied in the state's penal statutes."  27 Cal.3d at 176, 164 Cal.Rptr. at 844, 610 P.2d at 1330.[10] Thus, it is clear that California's interest in providing a cause of action for violation of public policy or a statute is the enforcement of the underlying statute or policy, not the regulation of the employment relationship.

In contrast, California's interest in job security based on an express or implied contractual term of employment is quite different.  In *Cleary v. American Airlines,* 111 Cal.App.3d 443, 168 Cal.Rptr. 722, 168 Cal.Rptr. 722, the court held that "the longevity of the employee's service, together with the expressed policy of the employer [of adopting specific procedures for adjudicating employee disputes], operate as a form of estoppel, precluding any discharge of such an employee by the employer without good cause."  111 Cal.App.3d at 455, 456, 168 Cal.Rptr. at 729.  The court departed from the concept that "at will" employees could be terminated without any reason whatsoever, *see Marin v. Jacuzzi,* 224 Cal. App.2d 549, 553, 36 Cal.Rptr. 880 (1964), and applied in the employment context the "covenant of good faith and fair dealing" which it had implied into insurance contracts.  *See Communale v. Traders & General Insurance Co.,* 50 Cal.2d 654, 658, 328 P.2d 198 (1958).  Although the court used *Tameny* as precedent, it. went beyond it to protect a different type of interest, protecting "certain implied contract rights to *job security,* necessary to ensure social stability in our society."  111 Cal.App.3d at 455, 168 Cal.Rptr. at 729 (emphasis added).

**3.  *Garibaldi's Claim.***

■ Garibaldi has unequivocally pled wrongful termination in violation of public policy.  He argues that he was discharged because he reported a shipment of adulterated milk to the health officials after his supervisors ordered him to deliver it. Lucky Food Stores admit in their answer that the milk was condemned by the health authorities.  Sale or delivery of adulterated milk is prohibited by California law.  *See* Cal.Agric.Code § 32906 (West 1968) (unlawful "to sell . . . or deliver . . . any impure, polluted, tainted, unclean, unwholesome, stale or adulterated milk . . . .").

Garibaldi's "whistle blowing" to protect the health and safety of the citizens of California is exactly the type of conduct that the California Supreme Court protected in *Tameny.*  The Supreme Court's decision in *Farmer* rested explicitly. on the "State's interest in protecting the health and well-being of its citizens."  430 U.S. at 303, 97 S.Ct. at 1065.  *See also Malone v. White Motor Corp.,* 435 U.S. 497, 513 n. 13, 98 S.Ct. 1185, 1194 n. 13, 55 L.Ed.2d 443 (1978);  *Teamsters Union v. Oliver,* 358 U.S. 283, 297, 79 S.Ct. 297, 305, 3 L.Ed.2d 312 (1959).

Garibaldi's allegation that he was discharged in violation of public policy comports with the limitations of the *Farmer* holding.  As in *Farmer,* Garibaldi's claim is a "function of the . . . *manner*" in which the conduct was exercised "rather than a function of the . . . [conduct] itself."  430 U.S. at 305, 97 S.Ct. at 1066.  In contrast, if Garibaldi had alleged that he was terminated in violation of the collective bargaining contract, or, based on *Cleary v. American Airlines,* in violation of an implied covenant not to terminate without cause, the result might be otherwise.[11]

**10.**  Other states have adopted doctrines similar to *Tameny.  See, e.g., Trombetta v. Detroit, Toledo & Iron R.R.,* 81 Mich.App. 489, 496, 265 N.W.2d 385, 388 (1978) (discharge for refusal to manipulate pollution control reports—not preempted by RLA);  *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 417 A.2d 505 (1980)

(protesting testing harmful drug on humans);  *Ness v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975) (discharge for reporting for jury service).

**11.**  As discussed in note 9, *supra,* the rationale of *Cleary* is of doubtful applicability in this case.  The court relied strongly on the lack of

A claim grounded in state law for wrongful termination for public policy reasons poses no significant threat to the collective bargaining process; it does not alter the economic relationship between the employer and employee. The remedy is in *tort*, distinct from any contractual remedy an employee might have under the collective bargaining contract. It furthers the state's interest in protecting the general public— an interest which transcends the employment relationship. *See New York Telephone,* 440 U.S. at 533, 99 S.Ct. at 1337.[12]

### 4. The Effect of the Arbitration.

■ Lucky Food Stores also argues that Garibaldi should be barred from asserting a remedy in court because he chose to arbitrate his grievance, and attempts to characterize Garibaldi's action as an appeal from an arbitration award for statute of limitation purposes. This argument is not persuasive.

In *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court held that the plaintiff could pursue his remedy under Title VII of the Civil Rights Act even though he previously had submitted his grievance to arbitration, alleging in the arbitration that he was discharged on the basis of race and the arbitrator had found that he was "discharged for just cause." 415 U.S. at 42, 94 S.Ct. at 1016. "In filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not violated merely because both were violated as a result of the same factual occurrence." 415 U.S. at 49–50, 94 S.Ct. at 1020. The Court, recognizing that arbitrators look to the "industrial common law of the shop" and "[have] no general authority to invoke public laws that conflict with the bargain between the parties. . . ." 415 U.S. at 53, 94 S.Ct. at 1022, was unwilling to foreclose the employee from asserting rights created independently of the collective bargaining agreement.[13] We find the same considerations relevant here as in the preemption context—the state law may protect interests separate from those protected by the

---

job security possessed by *at will* employees under the former California common law. No such lack of job security exists for *union* employees. This is exactly the type of distinction the *Farmer* court had in mind in requiring that the conduct be "outrageous" and performed in a manner outside the scope of the normal labor relations context.

**12.** A recent decision supports the result we reach in this case. In *Machinists Automotive Trades District Lodge No. 190 v. Utility Trailer Sales,* 141 Cal.App.3d 80, 190 Cal.Rptr. 98 (1st Dist.), *appeal dismissed* — U.S. —, 104 S.Ct. 520, 78 L.Ed.2d 705 (1983), the California Court of Appeal held that an employee's statutory right of indemnity by his employer under state law was not preempted by federal labor law. The court said,

the fact that a matter is a subject of collective bargaining does not preclude the state from adopting standards to protect the welfare of the workers . . . . Bowser's statutory right to indemnity is independent of any contractual right.

190 Cal.Rptr. at 100, citing *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 52, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974).

The Supreme Court dismissed the appeal for want of a substantial federal question. —

U.S. —, 104 S.Ct. 520, 78 L.Ed.2d 705. A dismissal for want of a substantial federal question is a decision on the merits. *Hicks v. Miranda,* 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975).

**13.** The fact that Alexander's additional remedy was one created by *federal* rather than *state* law does not diminish the force of the argument. First, the focus of *Alexander* was the preclusive effect of the arbitration, not the preemptive effect of federal law—a supremacy clause issue. Second, the Supreme Court held in *Colorado Anti-Discrimination Comm'n v. Continental Air Lines, Inc.,* 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963), that a discrimination action under Colorado law was not preempted by the RLA. *See* 372 U.S. at 724, 83 S.Ct. at 1027. The Supreme Court of Oregon has recognized the implications of *Alexander* for preemption. *See Vaughn v. Pacific Northwest Bell Telephone Co.,* 289 Or. 73, 86, 611 P.2d 281, 289 (1980). *See also* Comment, *supra* note 7 at 658 n. 134; Summers, *Individual Protection Against Unjust Dismissal: Time for a Statute,* 62 Va.L.Rev. 481, 530 n. 216; Note, *A Common Law Action for the Abusively Discharged Employee,* 26 Hast.L.J. 1435, 1467–63 (1975); Comment, *Intimations of Federal Removal Jurisdiction in Labor Cases: The Pleadings Nexus,* 1981 Duke L.J. 743, 750–56.

NLRA provided the interests do not interfere with the collective bargaining process.[14]  Since we find that the state claim is not preempted, we do not find the prior arbitration a barrier.

### IV

### CONCLUSION

We hold that the claim for wrongful termination based on state public policy is not preempted by section 301 of the LMRA. Removal was improper.  Because the district court had no jurisdiction over this case, we reverse and remand to the district court with instructions to remand to the California state court.

REVERSED and REMANDED.

---

14.  *See* Comment, *supra* note 7 at 658.