Clifford T. **COSTELLO**

v.

**UNITED PARCEL SERVICE, INC.**

**Civ. A. No. 84–4869.**

United States District Court,
E.D. Pennsylvania.

Nov. 7, 1984.

Supplemental Memorandum Nov. 9, 1984.

Stephen Console, Philadelphia, Pa., for plaintiff.

Martin Wald, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

This action was originally filed in the Philadelphia Court of Common Pleas, and removed to this court on the basis of defendant's assertions of both diversity and federal question jurisdiction. Plaintiff concedes that the removal was proper under diversity jurisdiction, but does not concede that his claims arise under federal law. The defendant has filed a Motion for Summary Judgment, to which the plaintiff has filed a response.

Plaintiff was employed by the defendant for some 13 years until, in September 1983, he was discharged. The employment relationship was governed by a collective bargaining agreement between the employer-defendant and Local 623 of the Teamsters Union; the collective bargaining agreement included a detailed grievance mechanism.

Pursuant to the collective bargaining agreement, the union filed a grievance protesting plaintiff's discharge, and pursued the claim through arbitration, but on October 4, 1983, the grievance was finally denied. Almost one year later, in September 1984, plaintiff filed the present lawsuit, in which he claims that the stated reason for the discharge (dishonesty, in causing personal parcels to be delivered without payment, and in charging a customer's account with his personal shipping costs, without the customer's consent) was a mere pretext, and that the real reason for the discharge was retaliation against plaintiff for filing a worker's compensation claim. Plaintiff alleges that the employer not only wished to retaliate against plaintiff for filing a claim, but also wished to escape anticipated liability for plaintiff's prolonged ill-

ness and/or disability. Count I of plaintiff's Complaint purports to allege the state-law tort of "wrongful discharge" in violation of public policy. Count II asserts that plaintiff had "an implied contract of continued long-term employment," that the discharge decision was made in bad faith, and that the discharge "constituted an unlawful breach by defendant of the contract of employment between defendant and plaintiff."

While plaintiff's counsel has struggled valiantly to find an escape, I am compelled to conclude that settled principles of federal labor law mandate dismissal of this action. Generally speaking, § 301 of the National Labor Relations Act, 29 U.S.C. § 185, provides the exclusive remedy for violations of collective bargaining agreements. No employee protected by a collective bargaining agreement can sue the employer except after pursuing his grievance remedies under the contract, and either obtaining successful judicial review of the arbitration award, or establishing that his right of fair representation was violated. In the present case, there is no contention that plaintiff was not fairly and properly represented in the grievance and arbitration proceedings; moreover, any challenge to the arbitration award was required to be filed within six months after October 4, 1983, when the award was rendered.

There are, it is true, a few narrow exceptions to the general doctrine of federal preemption. For example, covered employees are not limited to § 301 litigation to obtain relief from racial discrimination, *Alexander v. Gardner-Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). And an employee is not precluded from litigating various independent torts under state law. *See, e.g., Linn v. U.S. Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (defamation); *Automobile Workers v. Russell*, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958) (black-listing); *Farmer v. United Brotherhood of Carpenter and Joiners*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (intentional infliction of emotional distress).

When, however, the harm sought to be addressed is that stemming from discharge or other disciplinary action, there are few, if any, exceptions to the preemption principle. The case which is perhaps most helpful to plaintiff is *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367 (9th Cir.1984). In that case, plaintiff had been employed as a truck driver delivering milk. He observed that a load of milk he was scheduled to deliver had spoiled. Allegedly, he was told to deliver the milk anyway, but instead complained to the local health authorities— an act of "whistle-blowing" for which, allegedly, he was fired. He unsuccessfully pursued a grievance and, a year or so later brought suit for damages. Treating the case as one of first-impression, the Ninth Circuit Court of Appeals held that the action could be maintained. The court reasoned that the state interest in protecting the public health was very strong, and outweighed whatever federal interest there might be in assuring uniform interpretation and implementation of national labor policy. Holding that Garibaldi's state-law claims were not preempted by § 301, the court remanded the action to the state courts.

Soon afterward, however, the same court decided *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468 (9th Cir. 1984), in which plaintiff alleged that he was discharged for complaining about violations of mine-safety requirements, and also for "concerted activity" involving such violations. The *Olguin* court upheld dismissal of the action, noting that mine-safety regulations were a federal matter, and that the issues sought to be raised fell squarely within the employer-employee, collective bargaining, context preempted by § 301.

It is not at all clear that *Garibaldi* would be followed by the Third Circuit Court of Appeals; but, assuming *Garibaldi* was correctly decided, I am persuaded that the present case more nearly resembles *Olguin* than *Garibaldi*. Plaintiff correctly asserts that the Commonwealth of Pennsylvania

has a legitimate interest in upholding the proper enforcement of its workers compensation laws, and thus in providing a remedy against retaliation for filing a compensation claim. But vindication of that interest is not significantly impeded by § 301 preemption. The "public policy" involved is directly related to the employment relationship itself. Plaintiff is attempting to sue his employer for damages for wrongful discharge, a matter governed entirely by the collective bargaining agreement.[1]

■ Plaintiff seems to argue that the issue of retaliation was not, and could not have been, considered in the grievance proceeding. Indeed, plaintiff's argument can be interpreted as asserting that the collective bargaining agreement provided virtually no protection against wrongful discharge, since, it is contended, the contract empowered the employer to discharge plaintiff at will. I believe this is an unduly strained interpretation of the collective bargaining agreement.

Article 43 of the collective bargaining agreement governs "discharge or suspension". Its language is, concededly, not a model of clarity. The pertinent provisions are as follows:

"The Employer shall not discharge nor suspend any employee without just cause until the case has been discussed with the Business Agent in person, where practical except where the provisions of this Article provide for discharge, but in respect to suspension or discharge shall give at least one warning notice of the complaint against such employee to the employee, in writing, and a copy of the same to the Union and Job Steward affected, except that no warning notice need be given to an employee before he is discharged if the cause of such discharge is ... proven theft or dishonesty....

"Discharge must be by proper written notice to the employee and the Union affected. Any employee may request an investigation as to his discharge or suspension. Should such investigation prove that an injustice has been done an employee, he shall be reinstated. Appeal from discharge, suspension or warning notice must be taken with ten (10) days by written notice and a decision reached within thirty (30) days from the date of discharge, suspension or warning notice."

Read literally, the first sentence of Article 43 can be interpreted to suggest that the employer does not need a reason for discharging an employee, so long as the matter is discussed in advance with the business agent. (On the other hand, if that strained interpretation were adopted, it is not at all clear that there would be anything to discuss.) A more reasonable interpretation of the full text of Article 43 is that it provides a graduated system of warnings and penalties which may culminate in the ultimate penalty of discharge; that discharge for a first offense is permissible only for the stated reasons (including the one relied on in plaintiff's case); and that the grievance mechanism is available in all discipline cases to remedy "injustice". Any doubt as to the correctness of this interpretation is removed when Article 41, the grievance section of the agreement, is reviewed. Section 2 of Article 41 provides:

"A grievance is hereby jointly defined to be any controversy, complaint, misunderstanding or dispute arising as to interpretation, application or observance of any of the provisions of this Agreement or Supplements hereto."

The balance of that article plainly contemplates that discharge decisions are subject to the grievance procedure—indeed, that such grievances are to be given priority handling.

Thus, the final decision as to plaintiff's grievance plainly established that plaintiff was found guilty of the dishonest acts alleged. It is inconceivable that a contention that the stated ground for dismissal was

---

1. By the same token, plaintiff's breach of contract claim must also fail. To the extent that the alleged contract is inconsistent with the collective bargaining agreement, the latter must prevail. *See J.I. Case v. NLRB*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944).

**126**

pretextual, and that the real reason for discharge was retaliation because of a compensation claim, would have been rejected as beyond the scope of the grievance proceeding (the present record does not make clear whether such a contention was actually advanced on plaintiff's behalf). Nor is there any genuine likelihood that such a claim, if meritorious, would have had less appeal to the grievance adjudicators than to a court in independent litigation. In short, there is no justification for attempting to carve out an exception to the preemption rule in this case.

Moreover, the policies underlying the federal preemption doctrine and collective bargaining concepts (*e.g.*, uniformity, informality and expedition in settlement of disputes, accommodation to the "law of the shop", etc.) would be disserved if litigation of this kind were permitted to proceed independently of § 301. There is at least an arguable "public policy" component in most discharge decisions.

The defendant's Motion for Summary Judgment will be granted.

### SUPPLEMENTAL MEMORANDUM

On November 7, 1984, I filed a Memorandum and Order dismissing this action, on the ground that plaintiff's exclusive remedy was that provided in § 301 of the National Labor Relations Act (not now available, for a variety of reasons). Shortly after that Memorandum was filed, the November 6, 1984 edition of United States Law Week was distributed. One of the cases reported therein is *Midgett v. Sackett-Chicago, Inc.*, 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (Ill.Sup.Ct.1984), in which a divided Supreme Court of Illinois held that, under Illinois law, employees covered by collective bargaining agreements may nevertheless sue their employers in tort, on allegations of discharge from employment in retaliation for filing worker's compensation claims.

The Illinois court reasoned that "at will" employees had such a right, and therefore the same right must be extended to employees covered by collective bargaining agreements. I respectfully disagree with this reasoning. Employees covered by collective bargaining agreements do not need a separate tort action in order to protect their rights, but may press their grievances under the union contract. Non-covered employees, on the other hand, would be without a remedy unless permitted to sue for discharges in violation of public policy.

A further reason advanced by the Illinois court majority is that punitive damages are not available in the collective bargaining context. While this may be true, I am not convinced that this additional remedy is of sufficient import to tip the balance. In short, I agree with the dissenters in the *Midgett* case, and adhere to the views previously expressed.

I am filing this Supplemental Memorandum at this time, so as to render it unnecessary for either party to file a motion for reconsideration in light of the newly reported Illinois case.