**LaVonne Simac HOHN, Plaintiff,**

v.

**KAISER CEMENT
CORPORATION, Defendant.**

**No. CV 85–16–BU–CCL.**

United States District Court,
D. Montana,
Butte Division.

Jan. 10, 1986.

Charles A. Smith, Helena, Mont., for plaintiff.

Thomas E. Hattersley, Gough, Shanahan, Johnson & Waterman, Helena, Mont., for defendant.

## MEMORANDUM AND ORDER

LOVELL, District Judge.

Plaintiff LaVonne Simac Hohn brought this diversity suit against her former employer for wrongful discharge. The complaint alleges state law causes of action for breach of the duty of good faith and fair dealing implicit in employment contracts and for intentional infliction of emotional distress. Defendant Kaiser Cement moves for dismissal, asserting that federal labor-contract law preempts plaintiff's state law tort claims.

The Supreme Court recently reexamined the preemption doctrine in *Allis-Chalmers v. Lueck,* 471 U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Under the rule set forth in *Allis-Chalmers,* this case must be dismissed because resolution of plaintiff's state law claims turns upon the interpretation of a collective bargaining agreement.

## BACKGROUND

At all times relevant to this action, plaintiff was a member of Local 435 of the United Cement, Lime, Gypsum and Allied Workers International Union. During the period of plaintiff's employment with defendant, she worked under a collective bargaining agreement negotiated between her union and her employer.

Plaintiff began working at Kaiser Cement's Montana City plant in March 1980. She worked as a laborer for one week and then as a custodian for the next six months. At plaintiff's request, she subsequently was reassigned as a laborer. On October 15, 1980, plaintiff sustained a back injury while at work, forcing her to discontinue working. In March 1981, a state workers' compensation evaluation panel determined plaintiff could return to her job if she avoided heavy work. After defendant offered to place plaintiff on "light duty" status, she obtained a release from her personal physician for that type of work. Plaintiff performed light duty from May 18, 1981 until October 16, 1981. On that date, plaintiff's supervisor directed her to shovel some loose cement into a wheelbarrow and to haul it away. Plaintiff responded she could not do so. Plaintiff was sent home and instructed to report to defendant's industrial relations manager on October 19, 1981. On October 19, defendant discharged plaintiff, effective October 16, for refusing to perform work within her laborer classification.

Plaintiff's union filed several grievances on her behalf—challenging her termination as unjust, seeking back pay and seeking a

less demanding position. At the union's request, plaintiff was reconsidered as an incapacitated employee. The union and defendant agreed plaintiff should be examined by a certain physician to determine whether she could perform the duties required for a different job. Plaintiff refused to submit to that medical examination. For this reason, defendant deemed plaintiff to have voluntarily severed her employment as of February 28, 1982.

The union determined that plaintiff had forfeited her job and pursued only the issue of back pay under the grievance procedure established by the collective bargaining agreement. The question of back pay ultimately was submitted to arbitration. Plaintiff's termination was not arbitrated.

On January 23, 1985, plaintiff commenced this action in federal district court on the basis of diversity of citizenship. She alleges defendant breached its duty to deal fairly and in good faith with her under her employment contract by discharging her without cause. She further alleges such wrongful termination, in and of itself, constituted intentional infliction of emotional distress. Thus, plaintiff's claim concerning emotional distress is substantially dependent on her claim for breach of the implied covenant of good faith and fair dealing.

Several sections of the collective bargaining agreement in question are relevant to the Court's consideration of this matter. These sections are as follows: "[T]his agreement shall become effective and remain in full force ... from May 1, 1981, to and including April 30, 1984." Article III, Section 3.1(a). "The Company reserves the right to discharge, suspend, or otherwise discipline an employee for good and legitimate reasons." Article XI, Section 11.1. "Any employee who becomes incapacitated and, *on the basis of competent medical opinion* cannot perform the duties of his or her regular job, may ... move to any position within the bargaining unit that he or she should be capable of performing." Article XII, Section 12.1 (emphasis added). "In the event that no satisfactory adjust-ment of the grievance can be made by the ... Company and the ... Union, then the matter may be referred by the Union to a Board of Arbitration." Article XVI, Section 16.2 "It is understood that it shall be the function of the Board of Arbitration to make decisions relating to the alleged violations of the terms of this agreement." Article XVI, Section 16.6

## DISCUSSION

Defendant moves to dismiss the claims advanced against it, asserting these state tort claims are preempted by federal labor law, in particular by Section 301 of the Labor Management Relations Act. 29 U.S.C. § 185. Plaintiff responds by arguing her state law claims fall within a recognized exception to the preemption doctrine. Specifically, she contends her state law claims arise independent of any labor contract between defendant and herself.

The federal courts recognize an exception to the preemptive effect of Section 301 exists where the state cause of action at issue is premised on state law obligations independent of a labor contract. *See, Allis-Chalmers v. Lueck*, 471 U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The issue of whether the state torts alleged in this case are sufficiently independent of federal labor-contract law to avoid preemption is a question of federal law. *Allis-Chalmers*, 471 U.S. at ——, 105 S.Ct. at 1912, 85 L.Ed.2d at 217.

In *Allis-Chalmers*, an employee brought an action against his employer, which was responsible for administration of a nonoccupational disability insurance plan pursuant to a collective bargaining agreement. The employee alleged bad faith in the handling of his insurance claim.

As set forth in *Allis-Chalmers*, the analysis to determine whether sufficient independence exists must focus on whether the state law tort action "confers non-negotiable state law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms

of the labor contract." 471 U.S. at ——, 105 S.Ct. at 1912, 85 L.Ed.2d at 216. The Supreme Court found the state tort action at issue in *Allis-Chalmers,* the implied duty of good faith attendant employment contracts, derived from the contract and was defined by the contractual obligation of good faith. Any attempt to assess tort liability under those circumstances, therefore, "inevitably" would involve interpretation of the terms of the collective bargaining agreement. 471 U.S. at ——, 105 S.Ct. at 1914, 85 L.Ed.2d at 219. The Court held that when resolution of a state law claim is substantially dependent upon an interpretation of a collective bargaining agreement, the claim must either be treated as a Section 301 claim or dismissed as preempted. 471 U.S. at ——, 105 S.Ct. at 1916, 85 L.Ed.2d at 221.

The instant case presents precisely such a situation as that presented in *Allis-Chalmers.* The Montana courts have found an "implied covenant of good faith and fair dealing" attendant in contracts of employment. *Gates v. Life of Montana Insurance Co.,* —— Mont. ——, 668 P.2d 213 (1983); *Dare v. Montana Petroleum Marketing Co.,* —— Mont. ——, 687 P.2d 1015 (1984). Breach of this implied duty of good faith is a tort under state law. *Gates,* 668 P.2d at 215.

Plaintiff's state tort claims are completely dependent upon resolution of questions of contract interpretation. The collective bargaining agreement provides defendant may discharge employees for good cause. Plaintiff's refusal to submit to an examination by a physician selected by defendant and her union is inconsistent with the contract provision requiring that any determination an employee is incapacitated be based on competent medical opinion. The question of whether defendant dealt fairly and in good faith with plaintiff is inextricably intertwined with interpretation of the labor contract itself. As the Montana tort law regarding good faith purports to define the meaning of the contract relationship, the law is preempted in those labor contracts falling within the scope of Section 301 of the Labor Management Relations Act. Thus, plaintiff's state law claim for breach of the implied covenant of good faith and fair dealing is preempted.

The Court's analysis of the state law bad faith claim also is dispositive of the tort claim regarding intentional infliction of emotional distress. The complaint contains no allegations of post-termination tortious conduct. Rather, plaintiff merely alleges that her wrongful discharge, in and of itself, constituted intentional infliction of emotional distress. As stated above, the question of whether plaintiff's termination was wrongful is inextricably connected with interpretation of the collective bargaining agreement.

Plaintiff's reliance on *Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985), is misplaced. In *Garibaldi,* the Ninth Circuit concluded that a wrongful termination claim was not preempted by federal labor law because it was based on a violation of state public policy. Garibaldi claimed he had been discharged in retaliation for reporting an illegal shipment of adulterated milk to health officials after his supervisors ordered him to deliver it. The Court of Appeals reasoned that a state claim for wrongful discharge poses no threat to the collective bargaining process where it furthers a state interest in protecting the general public transcending the employment relationship. *Garibaldi,* 726 F.2d at 1374.

Plaintiff herein does not allege that her termination interferes with any state public policy independent of the employment relationship. Rather, she argues her discharge violates the state's important public policy in protecting its citizens from an employer's bad faith conduct in making decisions relating to the employment relationship. Were plaintiff correct, nearly all wrongful discharge actions would fall within an exception to the preemption doctrine, a result which the Supreme Court indicated that it did not embrace in *Allis-Chalmers,* 471 U.S. at ——, 105 S.Ct. at 1915–16, 85 L.Ed.2d at 220–21.

For these reasons,

IT IS ORDERED that defendant's motion to dismiss the above-entitled action, on the ground plaintiff's claims are preempted by federal labor law, is GRANTED.