**Tammy NELSON, Plaintiff,**

**v.**

**OWENS–CORNING FIBERGLAS CORPORATION, Defendant.**

**No. CV 85–35–BLG–JFB.**

United States District Court,
D. Montana,
Billings Division.

Feb. 14, 1986.

Joan Meyer Nye, Nye & Meyer, P.C., Billings, Mont., for plaintiff.

Sidney R. Thomas, Moulton Law Firm, Billings, Mont., for defendant.

## MEMORANDUM OPINION

BATTIN, Chief Judge.

Presently pending before the Court is defendant's motion to dismiss both counts of plaintiff's complaint. For reasons stated below, defendant's motion is denied as to Count I but Count II is dismissed for failure to make use of the grievance procedure outined in the parties' collective bargaining agreement.

## FACTS AND CONTENTIONS

Plaintiff, one of two teamsters employed by defendant at the Colstrip Power Plant project from November 8, 1982, to October 9, 1983, alleges that defendant terminated her on the basis of sex. Plaintiff, one of eleven employees terminated on October 9, 1983, was the only teamster discharged, and she was senior to the other teamster, a male. Plaintiff did not pursue the discharge through the grievance process outlined in the collective bargaining agreement in effect between the parties.[1] Instead, plaintiff filed a charge of discrimination with the Montana Human Rights Commission. The Commission issued a right to sue letter in September 1984. Plaintiff subsequently filed a lawsuit in state district court. Defendant removed the case on the basis of diversity and it is now properly before this Court. Plaintiff's complaint contains two claims for relief: (1) Sex discrimination in violation of state and federal law; and (2) wrongful termination in violation of public policy and defendant's obligation of good faith and fair dealing.[2]

Defendant moves to dismiss on grounds that plaintiff has not exhausted her administrative remedies under the collective bargaining agreement and the Court, therefore, lacks jurisdiction over the action. Plaintiff contends that exhaustion is not required under either count since both claims for relief are independent of the collective bargaining agreement.

## DISCUSSION

### I. Title VII Action

Count I of plaintiff's complaint alleges that defendant employer discharged plaintiff on the basis of sex, in violation of 42 U.S.C. § 2000e–2(a)(1) (Title VII). Defendant concedes that "plaintiff's sex discrimination in Count I of her complaint is not precluded by the rule normally requiring exhaustion of administrative remedies under collective bargaining." Defendant's Reply Brief, relying on *Gibson v. Local 40, International Longshoremen's Union,* 543 F.2d 1259, 1266, n. 14 (9th Cir.1976). Therefore, defendant has withdrawn its motion to dismiss as to Count I.

### II. Tort Claims

Count II of plaintiff's complaint alleges that defendant both wrongfully terminated plaintiff's employment by discriminating on the basis of sex, in violation of public policy, and breached its obligation of good faith and fair dealing implicit in the terms of plaintiff's employment. The question before the Court is whether plaintiff can maintain those independent tort actions or whether such actions are pre-empted by federal labor law.

Any breach of a provision of a collective bargaining agreement arises under § 301 of the Labor-Management Relations Act (LMRA). 29 U.S.C. § 185(a). *Allis-Chal-*

---

1. Plaintiff complained to her Union representative about the discharge but the Union did not pursue the matter on her behalf. *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment,* p. 2.

2. Plaintiff moved to amend paragraph 11 of Count II of the complaint to allege that plain-

tiff's termination on the basis of sex violated public policy as well as defendant's obligation of good faith and fair dealing. Defendant voiced no objection to such amendment, and the amendment was granted in open Court on July 24, 1985.

*mers v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). At the time plaintiff was discharged, she was protected by a collective bargaining agreement, which provided that the employer must act in good faith in discharging employees, that an employee could not be discharged by virtue of sex and that no employee could be discharged without good cause. Exhibit A, Labor Contract, Article IV ¶ 8, Article VII ¶ 2(e). Claims are pre-empted by § 301 if they relate to "what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement...." *Allis-Chalmers,* 105 S.Ct. at 1911. Thus, the Court must decide whether federal labor law leaves room for either state tort action in this case. That question is one of congressional intent. *Id.* at 1910.

■ The federal regulatory scheme seeks to regulate the bargaining relationships between employers and employees. *New York Telephone Co. v. New York State Dept. of Labor,* 440 U.S. 519, 532–33, 99 S.Ct. 1328, 1337, 59 L.Ed.2d 553 (1979), and pre-emption under § 301 is required so that the relationships created by a collective bargaining agreement are defined by federal common law based on national labor policy. *Allis-Chalmers,* 105 S.Ct. at 1911. When actions touch on an area of primary concern of federal labor law, *i.e.,* the relationships defined by a collective bargaining agreement, then federal law remains exclusive. *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367, 1369 (9th Cir.1978).

■ In this case, plaintiff alleges both the tort of wrongful discharge and the tort of bad faith under Montana law. The former requires a violation of public policy, *Keneally v. Orgain,* 186 Mont. 1, 606 P.2d

127, 129 (Mont.1980), while the latter requires only a reasonable belief by the employee that he or she has job security and will be treated fairly. *Dare v. Montana Petroleum Marketing Co.,* 687 P.2d 1015, 1020 (Mont.1984).³ Both claims must be analyzed in light of the Supreme Court's ruling in *Allis-Chalmers.* Claims that confer non-negotiable state law rights on employers or employees independent of any right established by contract survive federal pre-emption. However, claims which are inextricably intertwined with consideration of the terms of a labor agreement are pre-empted. *Allis-Chalmers,* 105 S.Ct. at 1912.

■ Plaintiff cites *Garabaldi v. Lucky Stores, Inc.,* 726 F.2d 1367 (9th Cir.1984) as controlling.⁴ *Garabaldi* recognized that wrongful termination in violation of state public policy survives federal pre-emption. In that case, plaintiff alleged that he was discharged in violation of California public policy because he reported spoiled milk to health authorities. The Ninth Circuit stated that pre-emption turns on the nature of the state interests involved, such as protecting the health of its citizens by disallowing the sale of spoiled milk. That interest transcended the employment relationship. However, the interests involved in the case at bar concern the terms of a collective bargaining agreement and the relationships established by such agreement. Additionally, the Court upheld Garabaldi's claim because of the *manner* in which he was discharged. An employer's conduct must be outrageous and performed in a manner outside the scope of the normal labor relations context. *See Farmer, Special Administrator v. United Brotherhood of Carpenters and Joiners of America, Local 25,* 430 U.S. 29, 97 S.Ct. 1056, 51

3. Defendant argues that Montana law no longer recognizes a distinction between the two actions. However, the Court is of the opinion that the Montana cases continue to recognize both torts. *Gates v. Life of Montana Ins. Co.,* 196 Mont. 178, 638 P.2d 1063, 1067 (1982); *Crenshaw v. Bozeman Deaconess Hospital,* 693 P.2d 487, 492–93 (Mont.1984). *See also,* Hopkins and Robinson, *Employment At Will, Wrongful Discharge, and the Covenant of Good Faith and*

*Fair Dealing in Montana, Past, Present, and Future,* 46 MONT.L.REV. 1, 14 (1985).

4. Defendant contends that *Allis-Chalmers* overrules *Garabaldi.* However, the Ninth Circuit has reconciled the cases. *Harper v. San Diego Transit Corp., et al.,* 764 F.2d 663, 668 (9th Cir.1985).

L.Ed.2d 338 (1977) (essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself).

■ In this case, the collective bargaining agreement provided the same protection that both tort claims provide. Under the agreement, the plaintiff could not be discharged on the basis of sex, without good cause or in bad faith. Thus, the collective bargaining agreement protected against wrongful termination, and it is unnecessary to discuss whether Montana law confers nonnegotiable rights on employees because those rights were not negotiated away by plaintiff. *Harper v. San Diego Transit Corp., et al.,* 764 F.2d 663, 668–69 (9th Cir.1985). The rights asserted by plaintiff derive from the contract, and any attempt to assess liability will involve interpreting the contract terms of "good faith" and "just cause." *Allis-Chalmers,* 105 S.Ct. at 1914–15. Thus, plaintiff's tort claims are "inextricably intertwined" with consideration of the terms of the agreement. The labor agreement provided the terms of employment as well as the remedies for breach of those terms, and the tort claims must be pre-empted. Otherwise, plaintiff could bypass arbitration by restating a breach of contract claim as a tort, thereby undermining the role of arbitration and frustrating the purposes of the federal scheme. In this case, § 301 pre-empts plaintiff's tort claims and they must be dismissed since the grievance machinery is the exclusive remedy for breach of the collective bargaining agreement.

The Court will issue an order in conformity with this Memorandum Opinion.